All right. Our final case for oral argument is 23-7055, United States v. Garcia-Limon. Good morning again, Your Honors. My name is Kathleen Shen, and I represent the appellate, Mr. Edgar Garcia-Limon. Mr. Garcia-Limon's convictions and sentences on counts 2 and 3 of the indictment should be vacated, and those counts should be dismissed for three related reasons. First, those counts should have been dismissed because they do not identify the factual incidents that are the basis of the charges. That violates long-standing Tenth Circuit and Supreme Court precedent, which holds that an indictment must identify the elements of the charge and the factual circumstances underlying them. This requirement is rooted in the Fifth and Sixth Amendments, including the Grand Jury Clause and the requirements of fair notice. Counts 2 and 3 don't serve their constitutional functions. In addition to the unprecedented eight-year time period, which covers the entire period during which D.C. lived with the defendant, the counts do not include any other detail identifying the factual circumstances of the underlying criminal act. And that's the case even though D.C. ultimately did give evidence regarding specific acts, multiple specific acts. And as a result, in this case, for one, there is a serious risk that Mr. Garcia was prosecuted on the basis of facts that were not found by the Grand Jury. The indictment doesn't specify the incident that was the basis of the Grand Jury's charging decision on either counts 2 or 3, and there's no way to know that Mr. Garcia-Limon's conviction at trial was based on those same facts. And given that the government, in fact, relied on numerous acts, including acts that D.C. could not remember or describe, it is, in fact, likely that the conviction was based on an act other than the act that was the basis of the indictment. The charges also were not sufficiently specific to enable Mr. Garcia-Limon to prepare his defense. The indictment did not inform him what allegation of sexual abuse he would face at trial. And even if he could have defended against certain allegations, there was nothing that prevented the government from shifting its theory of liability to a different allegation altogether. And that sort of leads into this third concern, which is that the vagueness of the counts posed a serious risk of unfairness at trial. Again, they didn't prevent the government from shifting theories according to the vicissitudes at trial, as the Supreme Court noted as a concern in Russell. And they also, because they didn't identify any specific incident of sexual abuse, they didn't require the jury to deliberate upon any specific factual detail. And there is a real risk in this case that Mr. Garcia-Limon may have been convicted because where there is smoke, there must be fire. And, of course, that's a concern the Supreme Court discussed in Richardson when it was construing the continuing criminal enterprise statute. The indictment, it did allege at least one sexual act, admittedly within a lengthy period of time. And then we do have testimony of at least three specific instances that are within the period of time. Why isn't that adequate notice that he's being accused of violating these statutes and there's going to be evidence produced at trial that will support the allegation? So I think the constitutional harm is really the clearest when you consider the grand jury right. And so a sufficient indictment ensures that the factual predicate of the indictment is identical to that of the conviction. And the very purpose of the grand jury clause is to ensure that the defendant's charges are based on the judgment of the grand jury, which is acting independently of either the prosecuting attorney or the judge. And so whereas here the indictment doesn't specify, for example, which of, for example, three acts is the basis of the charge, there's no way to know what act was in the grand jury's mind when it passed the indictment. And of course, as the Supreme Court held in Russell, to allow the prosecutor or the court to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of his basic protections that the grand jury clause secures. Because otherwise the defendant could be convicted on the basis of facts that were not found by and maybe not even presented to the grand jury which indicted him. So in this case, for example, Judge Timkovich, you alluded to perhaps there's three specific acts that we can identify from D.C.'s trial testimony. And if I could, the government argued and I think the district court credited the notion that the indictment described a generalized scheme to commit sexual abuse. And rather than pointing to specific instances, they say, well, this is like, you know, money laundering or, you know, a broad scheme to commit an act. What's the flaw in that argument? There's, I think, many flaws in that argument. And I think it's clear both, you know, in our second issue, the statutes here, 2241C and 2244, in which Congress has defined the crimes of aggravated sexual abuse and abusive sexual contact, don't permit charging by scheme. Those statutes plainly define or criminalize singular sexual acts. The government has pointed to nothing in the language of the statutes that would permit this theory of charging multiple acts as one offense. And I believe every court of appeals that's reached the issue has held, as the Ninth Circuit held in Yazzie, that these statutes criminalize the individual sexual or the individual sexual act. There's also very good reason not to interpret the statutes that way, besides their text. Of course, and if you look at the Richardson case, there the Supreme Court was considering a statute which, by its plain language, does criminalize, does make one crime out of multiple acts, which, as the Supreme Court recognizes, is very odd. That's not how crimes are typically prosecuted. That's not what our Anglo-American tradition of crime provides for. But there, Congress said, no, there is a crime. It's for a series of violations. But even in those circumstances, the Supreme Court said, we're not going to allow the government just to prove some unknown or gesture at some series of crimes and let the jury decide which of those crimes is the basis of the indictment and which of those crimes can be the basis of the conviction. If you want to have a constitutionally valid CCE count, the government has to plead each of the underlying factual incidents that forms each violation of federal criminal law. And that is what ensures both that the grand jury is finding specific acts and that the jury's verdict, the trial jury's verdict, is ultimately on the basis of the same facts that were found by the grand jury. And again, Your Honor, I think it's really notable that in the Second Circuit case Montague, where the Second Circuit held that facts and circumstances were not required to be applied for CCE violations, that generated multiple dissents. The SG confessed error. The Supreme Court sent it back. And on remand, the indictment, those counts were dismissed. So if we approve the indictment, does that necessarily mean the jury instructions are not erroneous? I'm sorry, Your Honor, I don't understand. If we disagree with you on the indictment, does that take away your argument that the jury instructions are flawed? So I think you're referring to my constructive amendment claim. And I think that if you think the indictment is constitutionally sufficient, it still doesn't resolve the problem that the language of the indictment is plainly charging Mr. Garcia-Limon with a sexual act, an act of abusive sexual conduct. It doesn't specify what act that is. And then the government's evidence and arguments at trial create a serious risk, and I think, indeed, a probability that there is a disconnect between the basis of the trial jury's verdict and whatever the act in the indictment was. Well, counsel, let me, I'm following what you're saying, but let me go back to your wording as to the issues that you've raised. I understand counts two and three were failure to provide sufficient notice of the charged offenses. Were you trial counsel below that? I was not, Your Honor. Well, was there ever a bill of particulars filed on behalf of the defendant through his counsel to make that more specific as to what was concerning the people? I have two responses to that, Your Honor. So, first, trial counsel did file a timely motion to dismiss, and in response to that, the government's position was, we are not relying on any specific act. This is charging you with any act that occurred within the eight-year period, and the district court ultimately That doesn't answer my question, counsel. My question is, was there ever a bill, if your client doesn't know or doesn't know how to defend himself because it's not clear enough, the normal procedure would be to file for a bill of particulars, and that was not done in this case? Your Honor, I don't believe a motion for a bill of particulars was filed, but I don't think that defeats our claims here for two reasons. So, first, the Supreme Court has held a bill of particulars can't cure a defective indictment because it doesn't solve the problem of knowing what was in the grand jury's mind, and that's exactly what the Supreme Court is talking about. That's not what you've said. Your position is for failure to provide sufficient notice of the charged offenses. Your Honor, I believe the brief also discusses the grand jury concern. That's clearly briefed. Well, it may, but I'm not there yet. I'm looking at your first issues. So, the first issue, the sufficiency of the indictment, is determined by whether it meets multiple constitutional functions, one of which is to provide the defendant with notice, and another is the grand jury function. And the Supreme Court specifically said in Russell that a bill of particulars can't save a deficient indictment because it is the role of the grand jury acting independently of the prosecutor to decide what the charges are. And so for a prosecutor to come in afterwards and say, no, no, this is what the charges mean, it actually deprives the defendant of his grand jury rights. Second, it would have been futile for Mr. Garcia-Limon to seek a bill of particulars in this case because the government's position was, and they made this clear in its response to the motion to dismiss, that it would, in fact, seek to rely on any of these events at trial. It was not, its position was that it was not limited to any specific event. And that is actually what the district court held, that Mr. Garcia-Limon could be convicted on the basis of any event occurring during the eight-year period if it was proven at trial. So the rulings in this case made clear that a bill of particulars would not have solved the problem because the government's position was that it was not relying on any particular incident of sexual abuse. And I think that's clear not just, so one, that's what they said they were doing for trial. The district court ruled that was permissible. And then if you actually look at the way they argued this case in closing, they say what he says is sexual abuse, what she says is sexual abuse, and she even talked about things that she doesn't remember happening. So they're clearly inviting the jury to convict on the basis of not only what's in the discovery, but D.C.'s general allegations at trial that this happened times that she couldn't even remember or describe, and obviously that wouldn't have been a discovery either. The government's theory was that they did not have to prove any particular act of sexual abuse. That is not consistent with what the Constitution requires of a pleading, and the government's theory violated both the language of the statutes, created serious constitutional concerns, and constructively amended the indictment, which, again, does not. Can we assume, though, that based on the unanimity instruction that the jury found at least one sexual act within that time period? No, Your Honor. Two reasons. So first, the actual unanimity instruction in this case only requires unanimity as to the count. It doesn't require unanimity as to the act. And again, these errors were in the indictment. This is a pretrial error, so I don't think the unanimity instruction really was necessary because the problem is with the indictment itself. Finally, the unanimity instruction wouldn't have solved the grand jury problem, and it wouldn't have given Mr. Garcia notice and an adequate opportunity to prepare for trial. Your Honor, I'm happy to answer any more questions, but I also want to reserve some time for rebuttals. Thank you. Good morning. May it please the Court. My name is Benjamin Traster, and I represent the United States. For approximately seven or eight years, the defendant opportunistically engaged in sexually assaulting and sexually abusing the victim, D.C. This case asks how such regular carbon copy type instances of sexual abuse has to be charged in an indictment, where a victim, a young victim in particular, becomes accustomed and inured to such regular sexual abuse, such that, in fact, that sexual abuse becomes essentially indistinct over time. Secondarily, in a case like this, where the abuse was a fact of life for the victim and accommodated, and where the victim admitted at trial she had trouble with dates, so much so that she admitted she had trouble remembering the birthdays of her step siblings, and where the defendant also, and this is important, confessed largely to sexually abusing the victim as well, where he also provided a wide date range during which the abuse occurred. This case asks also whether there are any alternative ways to charge this particular type of sexual abuse. Is this, is this, I really didn't see another case quite like this one where the government's charged a scheme of sexual abuse. Is this a first of its kind, or are there some other examples out there that I might have overlooked? I don't think so. I do think that there is a case out of the Sixth Circuit, and we cited it, the Valentine v. Conta, I'm not sure how it's pronounced, case. And what's actually interesting about that case is the way that it was a state case on a habeas petition, and the way that that case was of note, I should mention that the way that that indictment was charged, and of course the question as to whether the indictment was sufficient. There were like 20 counts of sexual abuse weren't there. That's exactly right. Twenty identical counts of one, I believe one type of sexual abuse, and 20 identical counts of another type of sexual abuse. And what the Court ultimately found was that in fact that way of charging was problematic and ultimately found, that was a, I believe, 10 months or 17 months period of time in that case. But at least in that case the jury unanimously found, you know, what they dismissed, 19 of the 20, but they relied on one count where the jury found a sexual act. I actually, I'm not sure on that. And what I mean is that the jury may have found, I think the jury actually found the defendant guilty of 35 different counts. And what the court, the courts on appeal had problems with was differentiating how do you differentiate something like those 35 counts. So it was later, a later court of appeal, on appeal that said we will find you guilty of one count of each because. That just seems pretty dissimilar. I mean that's kind of a suggestion by the Sixth Circuit. It's, you know, they're on habeas versus, you know, here we're talking about the charge, the indictment, you know, so you're from out of the gates, the government's theory here was that this was a scheme, right? I don't know that that's exactly correct, that this was a scheme. Or I think that there are sort of maybe distinctions without a difference as to how this is described. This was always described as a continuous course of conduct, numerous instances of regular carbon copy type sexual abuse. And the reason why that's important is because, number one, Judge Timkevich, you were just asking about unanimity. I think that there's a footnote in the Jaynes case. The Jaynes case is about numerous instances of forgery where the district court relied on the Jaynes case to say that any one particular instance of sexual abuse in this case is sufficient for the, to find the count, to allow the jury to find guilt on a particular count. I do agree with that, but I do have one concern about the way this case unfolded. And the prosecutor highlighted specific acts of sexual abuse over the time period. But how can I be assured that the jury unanimously found that Mr. Gay committed abuse on this date as described by the victim? In other words, we've got three or four instances. I might have four of the jurors agree that he committed abuse on Monday, four different ones on Tuesday, and four different on Wednesday. But no 12 of them ever agreed that he committed an act of sexual abuse. And it seems to me that this record permits that type of problem. Well, I would disagree, and the reason that I would disagree is based on the footnote that I just referenced in the Jaynes case. It's footnote 7. And what that footnote actually lays out is how the jury in that case, where there were initially 64 different forged checks, but I think they whittled it down to ultimately saying it was either 5 or 10 different checks. How could the jury in that case find that there was a forgery? How do they know which of those checks established the forgery? And the court laid out in that case exactly how that logic works, and I think it applies in this case as well. In this case, the victim testified about these instances of sexual abuse. I would argue it was well more than just three instances, because she said it was every time she was, first of all, when she lived with her mother and father, it was repeated. And then even when she was living with her biological father, when she came back for visitation, it would go on. So, but the logic is the jury had to believe her. The jury believed her because they found the defendant guilty. The defendant never, he admitted to some kinds of sexual abuse, but he minimized the sexual abuse that he committed. Ultimately, when the jury believed her, because the sexual abuse was, in effect, carbon copy type sexual abuse, the jury had no way, if the jury believed one instance, the jury believed all of the instances. And there was no way for the other.  Why would we assume that? It's not assuming it. I think logically it has to be. The jury simply had two people to decide from. Did the jury decide that they believed the victim, or did the jury decide that they believed the defendant's words, not when he testified, he didn't testify, but in his statements, in his interview with the police, in his statements over jail communications. So I think what the jury did was the jury had to have said, we believe the victim in this case, and we believe how this abuse went down over all of these instances. Even if they don't agree that abuse occurred on a specific, discreet time period? Well, I think there, I mean, unfortunately, there was a long time period, and that time period was over the course of, as I said, seven or eight years. So I think that there were discreet instances, and the victim testified to discreet instances. She just couldn't provide dates of those discreet instances. And I think that that's actually, in some respects, the question as to the sufficiency of the indictment that the defendant challenges. The defendant challenges whether or not there were factual elements that were included in the indictment. Well, of course there were. And the government even chose from among the different theories of which sexual act the government was prosecuting, which was one of four different definitions that could be prosecuted. So the indictment satisfied the requirements of an indictment according to the circuit's case law and according to Supreme Court case law. I think, for what it's worth, the defendant relies on the Russell case, which is a little sui generis in terms of why there needed to be such additional facts. But I would also note, and I want to point out, the defendant also relies particularly for the duplicity and constructive amendment argument. And you could hear it from counsel in her argument. The defendant puts a lot of weight on the word a, a sexual act means that that definition has to be one singular sexual, one singular instance. But I would argue to the Court that the statute actually is more capacious than that. So the statute prescribes whoever engages, knowingly engages in a sexual act. Well, by definition, 2246 provides four different sexual acts. A comparison, a good comparison to show how that word a is referring to one of many definitions in 2246 is that if you compare that to the other charge, count 3, which is abuse of sexual contact, that charge prescribes knowingly engaging, knowingly engages in or causes sexual contact. So there is no singular a anymore when you don't have multiple different pathways in that definition for a sexual act. And what I would suggest is that, in fact, if the Court looks at the definition of the word engage, what the Court's going to find is that it's not as limiting as what the defendant wants it to be. So, and I apologize, I didn't put this in the brief, but, for example, Merriam-Webster defines one of, and I think the most appropriate definition for the word engage is begin and carry on an enterprise or activity, or do or take part in something. OED describes it as entering upon an action. I think that that text, that definition in and of itself implies that there is the need for engaging in something, that it may, in fact, be ongoing. And I think that also provides an avenue in the text for an ongoing, ongoing instances of abuse. And I think that... Counsel, can I just stop you there? Sure. So can you address the Yassi case of the Ninth Circuit? You know, Your Honor, I apologize, I'm not familiar with it. I can't. Okay. Well, I guess I'm trying to pin you down on, and this is where Judge Timkovich started, which is to have an example of where this statute has been used in the way you're suggesting. Has any, do you have any case, anywhere, where there has been some interpretation that a sexual act doesn't mean it can be a scheme of sexual acts? Well, again, I would go back to the way that that clause is written, engages in... Okay, so no. No, not that I'm aware of. No. But the only case that I would point to is in the recent case that was decided in July by this Court, United States v. Sweet, there was a reference to a case out of the Ninth Circuit, the Lopez case. And in that Lopez case, what they do is they describe essentially the meaning of the word any and a. And one of the things that the Court describes with the meaning of a is that it has a generalizing intent. And I think that that, again, goes to the fact that it's not this singular, specific, it's not engaging in one single sexual act. Its sexual act has a very specific definition. It is defined in 2246, and in this case, it's 2246-2, which has four parts to it. And so even in the indictment, I believe that the indictment refers to 2246-2D, which is the intentional touching directly and not through the clothing of the genitalia and for the purpose of degrading, abusing, humiliating, et cetera. So I think that the fact that it is a sexual act, and that's in contrast to the abusive sexual contact statute, which refers to not a sexual contact. It refers to sexual contact, which doesn't have those choices. I think grammatically that is the only way to make sense of engaging in a sexual act when it is a cross-reference to the definition. But I don't have a case that says this is how 2241 or 2244 has been previously operated. But I would also point to, I think, both policy-wise and reasoning-wise, that the Valentine case points out, and I think the defendant has to concede, that child abuse is not like a continuing criminal enterprise. Child abuse, child sexual abuse, is not like other crimes. And so because of that, the defendant in the reply brief talks about drug distribution as though that is somehow similar as how it's investigated, how it's reported to child sexual abuse. And that's simply not the case. And this is the case of a victim and a defendant who both agreed that sexual abuse occurred. The defendant told the police, told agents, that the sexual abuse occurred, began at times when she was 5 or 6. And then in a jail phone call, he told his wife that it happened when she was, I believe, 10, he told her. There was a wide range even there. Not only that, but I would also point out when we're talking about what the indictment gave the defendant notice of, the defendant filed, first of all, the government filed a trial brief. The defendant filed a trial brief. Dockets numbers 121 and 123. The defendant later filed a motion to reconsider. And in it, the defendant talked of events occurring in a broad time frame, talked about unspecific dates. The defendant knew exactly how the victim was going to testify, that she could not provide specific dates, but also talked about this lengthy period of time. So the defendant was on notice and suffered no prejudice, even if there was any faults in the indictment, which I don't believe there were any deficiencies in the indictment. Very quickly, on duplicity, the indictment charged one offense, the knowing, touching directly and not through the clothing. And it wasn't constructively amended at all during the trial. There was sufficient evidence for the jury to find unanimously that an instance of sexual abuse occurred, and I think logically they did. With that, the government would ask this Court to affirm the conviction of the defendant. Thank you. Thank you. Apologies. Take your time. Your Honor, I think there's a lot of things I would like to respond to, but I feel that the core of the disagreement with the government is my view of what a federal crime is. A federal crime is made up of a specific factual incident. When a jury charges someone with a crime, it's not charging them with having ever engaged in some type of conduct. It's charging them with having engaged in a specific criminal act as a matter of historical fact, and that is what an indictment is required to plead. It's required to identify the facts and circumstances and to identify the essential facts of the crime and not just the type of crime that the government believes occurred. There's no constitutional exception for heinous crimes, and as this Court is sadly aware, prosecutors often have to charge child sexual abuse offenses involving similar issues with memory, but they do so without violating the basic pleading requirements set forth in the Fifth Amendment and without running roughshod over the plain language of the statutes. I think Jaynes is distinguishable for many reasons. You know, apart from the dicta reasons, the indictment in Jaynes actually identified each of the specific incidents of check fraud that went to the grand jury and went to the trial jury, so it's a totally different circumstances from this case where the specific acts are not identified anywhere. You know, Valentine, at one point I did want to make, is besides it being a different statute and also involved different constitutional interests, of course, the grand jury clause has never been incorporated against the states, and so the petitioner in Valentine wouldn't have had the same interest in knowing that his verdict was based on the same act that was found by the grand jury. And finally, you know, with the government's belated statutory interpretation argument, which, you know, I think shows, again, his reluctance to engage in the text, I think, is another big disconnect. It's not up to the prosecutor to decide what the indictment meant, and it's not up to the prosecutor to decide what is a crime. Those roles belong to the grand jury and they belong to Congress, and when you look at the statute and you look at the indictment, they simply did not permit the prosecution and conviction of Mr. Garcia-Lemon here, so we would ask for his conviction sentence to be vacated and for those counts to be dismissed. Thank you. Thank you, counsel. We very much appreciate the argument. You're excused. The case is submitted. And we're in recess until tomorrow at 8.30.